UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:16-CV-00150-LLK

**JOELYN ANN WILLS**                                                                                          **PLAINTIFF**

**v.**

**NANCY A. BERRYHILL, Acting Commissioner of Social Security**                    **DEFENDANT**

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Plaintiff's complaint seeking judicial review, pursuant to 42 U.S.C. § 405(g), of the final decision of the Commissioner denying her claim for Social Security disability benefits. Plaintiff's motion for judgment on the pleadings (i.e., the administrative record) and Defendant's fact and law summary in opposition are at Dockets 14 and 20. The parties have consented to the jurisdiction of the undersigned Magistrate Judge to determine this case, with any appeal lying before the Sixth Circuit Court of Appeals. Docket 16.

Because the administrative law judge's (ALJ's) finding that Plaintiff has the residual functional capacity (RFC) to stand/walk for 6 hours per 8-hour workday is unsupported by substantial evidence, this matter will be REMANDED to the Commissioner for a new decision and further administrative proceedings.

### Plaintiff's medical impairments

In 2001, an electroencephalogram (EEG) of the electrical activity in Plaintiff's brain revealed mild slowing and disorganization consistent with diffuse cerebral dysfunction and suggestive of central regulating mechanism disorder. Administrative Record (AR), p. 45. In 2014, Plaintiff continued to complain of dizzy spells, which were found to be a manifestation of seizure activity, on a daily basis. AR, p. 368.

In 2001, an electrocardiogram (EKG) revealed that Plaintiff also suffers from Wolff-Parkinson-White (WPW) syndrome. AR, p. 46. WPW syndrome is a heart condition in which there is an extra electrical pathway in the heart between the atria and the ventricles. Stottler v. Commissioner, 2010 WL 3833679 n.8 (M.D.Fla.). The condition can lead to episodes of tachycardia (rapid heart rate), syncope (loss of consciousness, often due to low blood pressure), and near-syncope (altered consciousness). Id.; 20 C.F.R., Appendix 1, § 4.00F(3)(b) (defining syncope and near-syncope). WPW syndrome can be treated by medications, electrical cardioversion (shock), and catheter ablation. Id. Although Plaintiff underwent ablation treatment, pseudo-seizure activity continued. AR, p. 46.

In addition to dizziness, Plaintiff's seizures manifest in the form of ataxia. AR, p. 416. Ataxia is a failure of muscular coordination. Ali v. Commissioner, 2016 WL 1090442 n.11 (E.D.Mich.). It often occurs when parts of the nervous system that control movement are damaged. Id. People with ataxia may experience a failure of muscle control in their arms and legs, resulting in a lack of balance and coordination or a disturbance of gait. Id. Plaintiff's ataxia results in gait disturbance and affects her ability to stand/walk. AR, p. 416.

### Plaintiff's disability claim prior to the ALJ's decision

In 2002, Plaintiff applied for Supplemental Security Income (SSI) benefits.

In January 2005, Plaintiff's treating physician, Lawrence Koss, opined, based in part on an EEG from 2001[1], that Plaintiff's unpredictable episodes of dizziness and seizure-like activity render her unsuitable to any workplace, require her to lie supine to resolve episodes, and limit her to 2 hours of standing/walking per 8-hour workday. Prior ALJ's decision at AR, p. 46.

---

[1] Because they were obtained in connection with Plaintiff's prior disability claim, neither Dr. Koss' opinion nor the EEG test results are part of the present administrative record. The opinion and EEG were discussed in the prior ALJ's decision, which is part of the present record. See prior ALJ's decision at AR, pp. 45-49.

In February 2005, the prior ALJ issued a fully-favorable decision, finding that Dr. Koss's opinion is entitled to controlling weight and that Plaintiff is restricted to sedentary work, with no more than 2 hours of standing/walking per 8-hour workday. Prior ALJ's Decision at AR, pp. 45-49.

Plaintiff received disability payments and did not work until 2011, when she began working as a customer service representative at a call center troubleshooting with customers over the phone. AR, pp. 28-29. Plaintiff earned $4,224 in 2011, $18,094 in 2012, and $5,503 in 2013. AR, p. 173. She was terminated from her job on May 30, 2013 due to frequent sick days and dizzy spells requiring her to lie down. AR, p. 30.

In July 2013, Plaintiff filed the present claim for SSI benefits, alleging disability beginning on May 31, 2013. AR, p. 12.

At the state-agency level, the Commissioner denied Plaintiff's disability claim. The state-agency non-examining program physician, Donna Sadler, found that there was no new and material evidence changing the prior ALJ's finding that Plaintiff is limited to sedentary work, with no more than 2 hours of standing/walking per 8-hour workday. AR, p. 76. The state agency found that Plaintiff was able to perform her past relevant work as a customer service representative, which was sedentary.

**Plaintiff's disability claim at the ALJ level**

Plaintiff requested review by an ALJ.

In December 2014, Plaintiff's new treating physician (after moving to Kentucky) was Anthony Flannery. Dr. Flannery diagnosed ataxia, seizure disorder, WPW syndrome, and vasovagal syncope. AR, p. 416. He opined limitations similar to those previously given by Drs. Koss and Sadler. He found that, beginning on May 31, 2013, Plaintiff "cannot safely work [and] must see a neurologist before [being] cleared for work." AR, pp. 416 and 418. He limited Plaintiff to 4 hours of sitting "on the floor" and no significant standing/walking during an 8-hour workday because her "problem is ataxia and [she] falls at walking and steps when dizzy." Id. He advised Plaintiff to use a four-legged walker. AR, p. 462.

3

In June 2015, the ALJ issued the decision presently before the Court, denying Plaintiff's disability claim. ALJ's decision at AR, pp. 12-19. The ALJ found that Plaintiff has a residual functional capacity (RFC) to perform light work except she can only occasionally perform postural activities, cannot use ladders, ropes or scaffolds, and must avoid all exposure to hazards. AR, pp. 15-16. By definition, light work contemplates an ability to stand or walk, off and on, for a total of approximately 6 hours of an 8-hour workday, with sitting occurring intermittently during the remaining time. Social Security Ruling (SSR) 83-10, 1983 WL 31251.

The ALJ found that Plaintiff is not disabled because she retains the ability to perform her past relevant work as a customer service representative, which was sedentary. AR, p. 17. Alternatively, the ALJ found that Plaintiff retains the ability to perform a significant number of light jobs in the national economy. AR, pp. 17-19.

The ALJ gave "little weight" to the opinions of Drs. Sadler and Flanner, which limited Plaintiff to sedentary work, with no more than 2 hours of standing/walking per 8-hour workday. AR, p. 17.[2]

**The ALJ's finding that Plaintiff has an RFC for light work is unsupported by substantial evidence.**

The ALJ's decision to give little weight to the opinions of Drs. Sadler and Flannery appears to have been based on the ALJ's broader finding that there is no objective anatomical or physiological "abnormality" supporting Plaintiff's complaints of dizziness, syncope, and ataxia affecting her ability to stand/walk:

> Since the alleged onset date [on May 31, 2013], there is no medical evidence of seizures or syncope. On July, 19, 2013, an MRI of the brain was normal. [AR, p. 312]. Cardiology exams were normal. [AR, pp. 494 and 500]. Neurology examinations by two different neurologists [Wesley Chou and Amir Zia] found no objective abnormalities. Numerous primary care provider examinations noted no abnormalities except on three occasions.[3] (ALJ's decision at AR, p. 16).

---

[2] According to Plaintiff, in rejecting the opinions of Drs. Sadler and Flannery, "the ALJ rejected every medical opinion of record [pertaining to what she can still do despite her impairments] and improperly substituted his own lay opinion of the medical evidence." Docket 14-1, p. 10.

[3] The three occasions are discussed at page 6 of this Opinion.

Contrary to the ALJ's finding of no "abnormality" supporting Plaintiff's complaints, the complaints are supported by the results of a 2001 electroencephalogram (EEG), which revealed mild slowing and disorganization consistent with diffuse cerebral dysfunction and suggestive of central regulating mechanism disorder. AR, p. 45. The "normal" brain MRI from 2013 does not prove that Plaintiff no longer suffers a central regulating mechanism disorder. Similarly, the "normal" cardiology exams from 2013 do not change Plaintiff's medical history, which indicates that, although Plaintiff underwent ablation in or around 2001 to treat her WPW syndrome, pseudo-seizure activity continued. AR, p. 46.

In 2013, neurologist Wesley Chou diagnosed "partial complex seizure, cryptogenic type epileptic type seizure" (AR, p. 323), uncritically noted that Plaintiff "complains of dizzy spells as her manifestation of seizure activity on a daily basis" (AR, p. 368), and signed off on a disability form indicating that Plaintiff, in fact, has a seizure disorder (AR, p. 321). In 2014, neurologist Amir Zia found that Plaintiff has an "abnormal EEG in the past and has been on Keppra [an anti-seizure medication] was started 2 years ago by a neurologist." AR, p. 487. Dr. Zia added Depakote, another anti-seizure medication, to Plaintiff's medication regimen to treat her migraines. AR, p. 488. Plaintiff took another anti-seizure medicine, Topamax. AR, p. 435.

The ALJ's finding that Plaintiff has no abnormalities causing her alleged seizures is contrary to the medical opinions of Drs. Sadler, Flannery, Chou, and Zia and her ongoing use of anti-seizure medication. The ALJ's finding appears to have been based upon an unwillingness to consider diagnoses and medical test results in Plaintiff's remote (pre-May 31, 2013) medical history, the reliability of which no physician has questioned.[4]

---

[4] Plaintiff argues that, to the extent the ALJ was unwilling to accept prior test results, the ALJ should have ordered a consultative examination and new medical tests to assess the extent of her limitations. Docket 14-1, p. 10. It lies within the ALJ's discretion to purchase a consultative examination. Foster v. Commissioner, 279 F.3d 348, 355 (6th Cir. 2001).

Dr. Sadler found a lack of new and material medical evidence changing the prior assessment of Plaintiff's impairments and limitations. AR, p. 76. In contrast, the ALJ found that "the previous ALJ decision … is no longer an accurate reflection of the claimant's work abilities [because] the claimant's medical situation has changed." AR, p. 16. Admittedly, Plaintiff's medical situation has changed in certain respects. For example, the ALJ found that Plaintiff no longer has a vocationally-significant mental impairment. AR, p. 14. There is, however, no evidence that Plaintiff's medical situation now allows her to stand/walk for 6 hours per 8-hour workday as required to perform light work.

Dr. Flannery's opinion was similar to Dr. Sadler's.

On December 12, 2014, Dr. Flannery noted that he had seen Plaintiff on three occasions. AR, p. 416. On October 7, 2014, he observed that Plaintiff's "gait is very slow and she does have an ataxic sway on walking. Romberg is equivocal." AR, p. 482. On November 20, 2014, he noted that, when ambulating, Plaintiff "did skate, is slow with small steps, does have a piece sway. Righting response is positive, with patient having to be caught." AR, p. 462. On December 12, 2014, he found that "[g]ait is slightly slow with slight ataxia sway. Romberg is borderline positive with definite anterior posterior sway. Righting response is positive." AR, p. 457.

The ALJ rejected Dr. Flannery's December 12, 2014 opinion because: 1) The gait "abnormalities" that Dr. Flannery observed on three occasions "do not support the limitations opined by Dr. Flannery including never stand/walk, never lift/carry, bilateral handling limited to 10% of the workday, bilateral manipulation limited to 20% of the workday, and never reaching"; 2) Dr. Flannery's notes after December 12, 2014 indicate no "abnormalities"; and 3) "[O]n May 4, 2015, an examination by neurologist, Amir Zia, M.D., did not note any abnormalities to support Dr. Flannery's opinion." ALJ's decision at AR, p. 17 referring to Dr. Zia's assessment at AR, pp. 487-488.

"[T]he ALJ must provide 'good reasons' for discounting treating physicians' opinions." Rogers v. Commissioner, 486 F.3d 234, 242 (6th Cir. 2007). In light of Plaintiff's medical history as a whole and her

need for anti-seizure medication, which no physician questioned, the ALJ's focus on objective "abnormalities" was somewhat misplaced. It is unclear how Dr. Zia's relatively benign neurological examination (including normal gait) on one occasion negates Dr. Flannery's observations over time of ataxic sway and dizziness. Dr. Zia continued to assess dizziness related to seizure activity and prescribed Depakote. AR, p. 488. While Dr. Flannery's observation of a gait disturbance on three occasions may not have fully supported his opinion that Plaintiff can never stand/walk, Dr. Flannery had a substantial medical basis for finding that she cannot stand/walk for 6 hours per 8-hour workday.

The ALJ's finding that Plaintiff has an RFC for light work is unsupported by substantial evidence.

**The ALJ's credibility assessment is unsupported by substantial evidence.**

At the conclusion of Plaintiff's testimony at the administrative hearing, Plaintiff exhibited behavior consistent with Dr. Flannery's finding that Plaintiff's dizziness requires her to sit on the floor to relieve symptoms.

The following exchange occurred (AR, pp. 35-36):

ALJ: And so you're – you're sort of slumped on the table and you have your hands out trying to support yourself. What's going on there?

Plaintiff: I'm dizzy, and I have a really bad headache.

ALJ: Do you – are you ever able to walk normally?

Plaintiff: Not – not really. It gets really bad when I leave the house, so I don't leave the house very often.

ALJ: I just note for the record though when you came into the hearing room, you were holding onto your attorney, Mr. Reeder, is that correct?

Plaintiff: Yes.

ALJ: Are you unable to walk on your own?

Plaintiff: Yes.

ALJ: Are you able to – we have around 10 or 15 minutes left in this hearing. You're able – are you able to continue?

Plaintiff: It usually helps if I can sit on the floor, but I don't know if I'd be able to.

ALJ: Well, I don't have any more questions for you. We'll … going to go to the vocational portion of the hearing, so if you want, go ahead and sit on the floor.

Plaintiff: Can you help me, please?

Attorney: Yes.

ALJ: Just for the record, the claimant is unable to get up on her own power, and is holding onto her attorney. Now she's sitting on the floor. Okay. We'll go to the vocational portion of the hearing.

The ALJ discounted Plaintiff's alleged need to avoid prolonged standing/walking and to sit on the floor due to dizziness because:

> At the hearing, the claimant's testimony and demeanor were observed, and the residual functional capacity [for light work requiring 6 hours of standing/walking per 8-hour workday] reflects, in combination with the other evidence, the credibility impression created by the claimant's testimony and demeanor. For example, the claimant held onto her representative while entering the hearing room. During the hearing, the claimant did not sit up straight, and at some point, she sat on the floor. This conduct did not match the above outlined treatment history including Dr. Zia's examination three weeks earlier.     (ALJ's decision at AR, p. 17).

When a credibility determination regarding a claimant's subjective complaints is at issue, a reviewing court will affirm the ALJ's finding only if it is "reasonable and supported by substantial evidence." Hernandez v. Commissioner, 644 Fed.Appx. 468 (6th Cir. 2016) quoting Rogers v. Commissioner, 486 F.3d 234, 249 (6th Cir. 2007). In other words:

> Whenever a claimant's complaints regarding symptoms, or their intensity and persistence, are not supported by objective medical evidence, the ALJ must make a determination of the credibility of the claimant in connection with his or her complaints based on a consideration of the entire case record. The entire case record includes any medical signs and lab findings, the claimant's own complaints of symptoms, any information provided by the treating physicians and others, as well as any other relevant evidence contained in the record. (Id. quoting Rogers at 247).

For the reasons indicated above, the ALJ lacked a substantial basis for rejecting the opinions of the treating physicians and others regarding Plaintiff's limitations. The ALJ's credibility determination regarding Plaintiff's subjective complaints is unsupported.

**Order**

Because the administrative law judge's (ALJ's) finding that Plaintiff has a residual functional capacity (RFC) to stand/walk for 6 hours per 8-hour workday is unsupported by substantial evidence, this matter is hereby REMANDED to the Commissioner for a new decision and further administrative proceedings.